RITA K. AYER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ayer v. Commissioner
Docket No. 47012-86
United States Tax Court
T.C. Memo 1989-614; 1989 Tax Ct. Memo LEXIS 614; 58 T.C.M. (CCH) 681; T.C.M. (RIA) 89614; November 14, 1989
Noah Nunberg and Roger E. Barton, for the petitioner. Anne Hintermeister and William R. Davis, Jr., for the respondent. GOFFE
MEMORANDUM *615 FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in petitioner's Federal income tax and addition to tax for the following taxable years: Addition to Tax
Taxable Year
Deficiency
Sec. 6653(a) [1]
1972
$ 1,378,285
$  68,914
1973
3,172,023
158,601
1974
2,789,029
139,451
1975
1,430,382
71,519
1976
2,613,943
130,697
After concessions by both parties, [2] the issue for our decision is whether petitioner is entitled to relief under the innocent spouse provisions of section 6013(e) from the deficiencies in Federal income tax and additions to tax resulting from the omitted income of her husband for the taxable years 1972 through 1976. *616 FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Rita K. Ayer (petitioner) resided in Nantucket, Massachusetts, at the time of the filing of the petition in this case. In 1966, petitioner married Frederick Ayer (collectively referred to as the Ayers). The Ayers were married and living together during the taxable years in issue. Petitioner had a son, Kip Robbins, by a prior marriage. Subsequent to their marriage, Mr. and Mrs. Ayer purchased a cooperative apartment in Manhattan for $ 50,000. During the taxable years in issue, the Ayers maintained their primary residence in this cooperative apartment. The yearly maintenance costs of this apartment were approximately $ 1,500 a month. Petitioner did not pay any part of these costs. During the taxable years 1972 through 1976 in addition to maintaining their residence in Manhattan, petitioner and Frederick Ayer owned a home in Sarasota, Florida, and rented a house in Nantucket, Massachusetts, each summer. With respect to the Sarasota home, Frederick Ayer paid mortgage payments of approximately $ 1,300 *617 a month as well as taxes and costs of repair and maintenance. In the taxable year 1972, Frederick Ayer paid $ 22,920 for repair and maintenance of the Sarasota home for damage caused by Hurricane Agnes. The amount of rent for the Nantucket house was approximately $ 2,000 per year and was paid by Frederick Ayer. Petitioner's sole responsibility toward the economic upkeep of these three homes was limited to paying the utility bills, the wages of the domestic help, grocery bills, and other minor items. She received no less than $ 30,000 a year from Frederick Ayer to pay for these household expenses. Petitioner did not have income during the taxable years in issue other than income derived from stock transactions. The following chart reflects the amounts expended by the Ayers during the relevant taxable years. Petitioner was aware of these expenditures. 1972
1973
1974
1975
1976
Maintenance -
Park Ave. Apt.
$  18,000
$ 18,000
$ 18,000
$ 18,000
$ 18,000
Sarasota, FL
Mortgage Pmts
15,600
15,600
15,600
15,600
15,600
Repairs
22,920
Taxes Paid
3,242
5,307
5,396
6,029
6,376
Nantucket
Summer Rental
2,000
2,000
2,000
2,000
2,000
Domestic Help
6,500
6,500
6,500
6,500
6,500
Expense Money
for Petitioner
30,000
30,000
30,000
30,000
30,000
Kip Robbins'
Allowance
6,000
6,000
6,000
6,000
6,000
Charitable
Contributions
7,592
6,730
10,004
4,466
3,161
Total
111,854
90,137
93,500
88,595
87,637
Gross Income
per Return
46,690
25,615
20,007
16,668
21,488
Difference
65,164
64,522
73,493
71,927
66,149
*618 In addition, Frederick Ayer paid for petitioner's travel expenses to and from Sarasota and Nantucket as well as one or more trips to Europe, and the cost of club memberships. Petitioner received her college degree in 1975. Petitioner was aware that her husband was in the business of selling and leasing airplanes and airplane parts during the years in issue and that he conducted this business through a number of corporations, including Frederick B. Ayer and Associates, Pan Ayer, and Universal Aircraft Corporation. Petitioner had no knowledge of her husband's specific business activities. Frederick Ayer filed Federal income tax returns for the taxable years in issue for these corporations. Petitioner did not execute, file, or prepare any Federal income tax returns relating to Frederick Ayer's business activities. From the taxable years 1972 through 1976, Frederick Ayer received distributions characterized as "loans" from the corporations through which he conducted business. He used these "loans" to pay personal and family expenses. Petitioner did not know of these "loans" during the taxable years in issue. The Ayers filed joint Federal income tax returns for the taxable *619 years 1966 through 1971. In the late 1960's, the Internal Revenue Service commenced an examination of the joint Federal income tax returns of the Ayers as well as the tax returns of Frederick Ayer's corporations. Among the issues involved in the earlier audit was whether certain "loans" from Frederick Ayer's corporations should be characterized as gross income. Petitioner was generally aware of this examination during the years in issue, but was not apprised of any details. On June 4, 1973, petitioner signed a power of attorney authorizing accountants and attorneys to represent her with respect to the examination for the 1969 through 1972 taxable years. After a period of 10 to 12 years after commencement of the audit, the parties reached a settlement. Petitioner has a judgment against her in excess of $ 1,000,000 as a result of unreported income from the earlier years. The Ayers filed joint Federal income tax returns for the taxable years 1972 through 1976. Pursuant to a power of attorney, Frederick Ayer executed the joint Federal income tax returns for the 1974 and 1976 taxable years on behalf of petitioner. Petitioner personally signed the joint Federal income tax returns *620 for the 1972, 1973, and 1975 taxable years. On each of the joint Federal income tax returns filed during the taxable years in issue, there were substantial understatements of tax which exceeded $ 500 and which were attributable to grossly erroneous items of Frederick Ayer. The understatements of tax resulted from distributions characterized as "loans" from corporations which were owned and controlled by Frederick Ayer and which constituted gross income. The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable years 1972 through 1976. In addition, the Commissioner determined additions to tax pursuant to section 6653(a) for the taxable years 1972 through 1976. Petitioner has conceded all of the deficiencies in Federal income tax and the additions to tax for the taxable years 1972 through 1976 as set forth in the Stipulation of Settlement, but claimed the defense of innocent spouse, pursuant to section 6013(e). OPINION When a husband and wife file a joint return, they are jointly and severally liable for the tax due thereon. Sec. 6013(d)(3). Petitioner is, therefore, individually liable for the tax resulting from the determinations in the *621 instant case even though the understatements of tax were attributable solely to grossly erroneous items of Frederick Ayer. The "innocent spouse" provisions of section 6013(e) provide relief for a spouse from joint and several liability if all of the following elements are met: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *. [Sec. 6013(e)(1)]. [3]
*622 Petitioner has the burden of proving that each element has been satisfied. Rule 142(a); . The parties have agreed that for each of the taxable years 1972 through 1976, a joint return was filed by petitioner and her husband and that there was a substantial understatement of tax on each return, as that term is defined in section 6013(e), attributable to "grossly erroneous items." Thus, in deciding whether petitioner is an innocent spouse pursuant to section 6013(e) for the taxable years in issue, we must decide whether petitioner has satisfied section 6013(e)(1)(C) and (D). Petitioner must establish pursuant to section 6013(e)(1)(C) that "in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement." In meeting this burden, petitioner must prove (1) that she did not have actual knowledge of the understatement of tax, and (2) that the omission was not of such character as to cause a reasonably prudent person possessed of petitioner's experience and temperament to have known of the omission. These matters are questions of fact to be decided on a case *623 by case basis. ; ; . With respect to petitioner's actual knowledge, petitioner testified that she did not examine any of the returns before signing them and for the taxable years 1974 and 1976 she did not see or sign them as they were signed on her behalf by Frederick Ayer. In addition, petitioner testified that she had no knowledge of her husband's specific business activities. We have found as a fact that she did not execute, file, or prepare any tax returns relating to Frederick Ayer's business activities. We found petitioner to be a credible witness. Therefore, on the basis of the record, we find that petitioner lacked actual knowledge of the omissions of income in the joint Federal income tax returns for the taxable years 1972 through 1976. The standard to be applied in deciding whether a taxpayer had reason to know is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know of the omission. *624 ; ; . For the taxable years 1972 through 1976 the Ayers reported on their joint Federal income tax returns gross income in the following amounts and made the following expenditures: 1972
1973
1974
1975
1976
Gross Income
$  46,690 $ 25,615 $ 20,007 $ 16,668 $ 21,488 Expenditures
111,854 90,137 93,500 88,595 87,637 Difference
(65,164)
(64,522)
(73,493)
(71,927)
(66,149)
Petitioner is an intelligent and educated woman. She was aware of the expenditures being made and, in addition, she signed the joint Federal income tax returns for the taxable years 1972, 1973, and 1975. Petitioner had no other source of income with the exception of income from stock transactions. While it is true that the Ayers did not live in a lavish or extravagant lifestyle, we think it is also true that a person of normal intelligence would have to know that the extremely modest income reported in the 1972, 1973, and 1975 returns would not support the Ayer family *625 in the manner in which they lived. Considering the small and decreasing amount of income reported by the Ayers on their joint Federal income tax returns for the taxable years 1972, 1973, and 1975, the magnitude and consistency of expenditures made during these periods, and the fact that petitioner knew of these expenditures, we conclude that petitioner had reason to know that Frederick Ayer had failed to report substantial amounts of income on their joint Federal income tax returns for the taxable years 1972, 1973, and 1975. Whether she knew of the source of the omitted income is not material to our decision. As petitioner did not see the 1974 and 1976 joint Federal income tax returns, we must look to other circumstances to decide whether she had reason to know of the omissions. In the late 1960's, the Internal Revenue Service commenced an examination of the joint Federal income tax returns of the Ayers as well as the tax returns of Frederick Ayer's corporations. Among the issues involved in the earlier audit was whether certain "loans" from Frederick Ayer's corporations should be characterized as gross income. Petitioner was generally aware of this examination during the taxable *626 years in issue, but was not apprised of any details. After a period of approximately 10 to 12 years after commencement of the audit, the parties reached a settlement. Petitioner has a judgment against her in excess of $ 1,000,000 as a result of unreported income from the earlier years. While an investigation by the Internal Revenue Service does not establish the omission of income from a return, it does put a reasonably prudent person on notice that the amounts on subsequent returns may not reflect reality. Petitioner knew of this investigation and in 1973 she signed a power of attorney authorizing accountants and attorneys to represent her with respect to an examination for the 1969 through 1972 taxable years. These facts, combined with the fact that petitioner was put on notice that something was amiss in the joint Federal income tax returns for the taxable years 1972, 1973, and 1975, leads us to the conclusion that petitioner had reason to question the validity of the returns in the taxable year 1974 and 1976. Moreover, we would be reluctant to hold that a spouse could escape her responsibility of knowledge of the contents of the return or the reasonableness of her lack of *627 knowledge of the contents of a return by merely granting a power of attorney to her husband to execute the return on her behalf. Accordingly, based upon the facts of this case, we hold that petitioner was apprised of the facts from which a reasonably prudent taxpayer would have known of the substantial understatements of tax in each of the 1972 through 1976 joint Federal income tax returns. She, therefore, fails the test required by section 6013(e)(1)(C) and cannot be held to be an innocent spouse. Because of concessions by both parties, and to reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1972 through 1976, and rule numbers refer to the Rules of Practice and Procedure of this Court.↩
2. On December 12, 1986, the petition in this case was filed by Frederick B. Ayer and Rita K. Ayer. On April 11, 1988, respondent filed a Notice of Jeopardy Assessment against Petitioner Frederick B. Ayer. On September 21, 1988, the Court granted a Motion to Sever filed by respondent asking that Frederick B. Ayer be severed as a petitioner from the case. In the Stipulation of Settlement filed by Petitioner Rita K. Ayer on July 28, 1988, the parties agreed that, in the event that it is determined that she is not an "innocent spouse," the following deficiencies and additions to tax will be due from petitioner Rita K. Ayer: ↩
Addition to Tax
Taxable Year
Deficiency
Sec. 6653(a)
1972
$  93,129
$  4,656
1973
101,790
5,090
1974
126,536
6,327
1975
109,904
5,495
1976
767,679
38,384
3. The current language of section 6013(e) was not in effect during the taxable years in issue. However, section 6013(e) was amended by the Tax Reform Act of 1984 with retroactive application to all taxable years to which the Internal Revenue Code of 1954 and of 1939 apply. Sec. 424(c), Pub. L. 98-369, 98 Stat. 801-803 (1984).↩